**Opinion issued October 25, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00079-CR

————————————

## MODESTO SANCHEZ LOPEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 12th Judicial District Court
Walker County, Texas
Trial Court Case No. 25336

## MEMORANDUM OPINION

A jury found appellant, Modesto Sanchez Lopez, guilty of the offense of possession with the intent to deliver cocaine weighing more than four grams but

less than two hundred grams,[1] and the trial court assessed his punishment at confinement for five years.[2] In his sole issue, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

Huntsville Police Department ("HPD") Detective J. Lehman, a narcotics investigator, testified that he had received numerous telephone calls concerning "suspicious activity" occurring at appellant's house. While conducting surveillance on the house, Lehman noted "moderate foot traffic" from persons that never stayed at the house "for any length of time." He opined that the activitiy was indicative of narcotics trafficking.

On September 1, 2010, Detective Lehman, along with Detective L. Schulz, decided to initiate a "consensual encounter" with appellant to obtain consent to search the home. HPD Officer J. Martinez accompanied the detectives as an interpreter, and he asked appellant for consent to search the home. Appellant consented, noting that "he had nothing to hide." While searching appellant's bedroom, Lehman found and seized "some Xanax pills" and "several baggies of

---

[1] *See* TEX. HEALTH AND SAFETY CODE ANN. §§ 481.002(5), 481.102(3)(D), 481.112(a), (d) (Vernon 2010).

[2] This appeal, originally filed in the Tenth Court of Appeals, Waco, Texas, was transferred to the First Court of Appeals, Houston, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).

2

cocaine." Throughout the rest of the house, Lehman found and seized forty-six "baggies" of cocaine. On cross-examination, Lehman explained that it was typical for narcotics dealers to "cut" pure cocaine with an adulterant so as to "take one kilogram of cocaine and make it three kilograms."

Severo Lopez, a drug section supervisor at the Texas Department of Public Safety Crime Laboratory, testified that he analyzed the substances seized from appellant's house. He confirmed that the substances tested positive for cocaine and the aggregate weight of the substances was 11.61 grams. On cross-examination, Lopez stated that his test also "indicated the presence of a dilutant," tetramisole, that is "typically found in cocaine samples." He did not, however, perform a test that would "show the exact purity" of the cocaine. Lopez also stated that he would be "very surprised" to test a sample that contained no dilutants or adulterants.

### Standard of Review

We review the legal sufficiency of the evidence "by considering all of the evidence in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.

3

App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

## Sufficiency of the Evidence

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction as alleged in the indictment because the State did not prove "the amount of <u>pure</u> controlled substance in the amount alleged in the indictment."

To prove possession with intent to deliver, the State must prove that the defendant (1) exercised care, custody, control, or management over the controlled substance, (2) intended to deliver the controlled substance to another, and (3) knew that the substance in his possession was a controlled substance. TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(38), 481.112(a) (Vernon 2010); *Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). A controlled substance is defined as "a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V or Penalty Groups 1, 1–A, or 2 through 4." TEX. HEALTH & SAFETY CODE ANN. § 481.002(5). A controlled substance "includes the aggregate weight of any mixture, solution, or other substance

4

containing a controlled substance." *Id.* The Texas Health and Safety Code defines an adulterant or dilutant as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." *Id.* § 481.002(49).

Here, the indictment alleged that on September 1, 2010,

[Appellant] did then and there knowingly possess, with intent to deliver, a controlled substance, namely, Cocaine, in an amount of four grams or more but less than 200 grams . . . .

In its charge to the jury, the trial court instructed,

You must decide whether the state has proved, beyond a reasonable doubt, four elements. The elements are that—

1.   [Appellant] possessed Cocaine in Walker County, Texas, on or about 1st day of September, 2010; and

2.   The Cocaine was, by aggregate weight, *including adulterants or dilutants*, four gram[s] or more but less than 200 grams; and

3.   [Appellant] knew he was possessing a controlled substance; and

4.   [Appellant] intended to deliver the controlled substance.

(emphasis added).

Appellant argues that because the indictment made no reference to adulterants or dilutants, the State was required to prove that he possessed more than four grams but less than 200 grams of "pure" cocaine. He asserts that the trial court, in including adulterants and dilutants in the jury charge, "impermissibly

5

lower[ed] the burden of proof required by the State's evidence." Appellant argues that because Lopez's testimony confirmed the presence of at least one adulterant in the cocaine seized from appellant's house, the evidence is legally insufficient to support his conviction.

In support of his argument that the State was required to prove the weight of "pure" cocaine, appellant relies on *Vera v. State*, 800 S.W.2d 310 (Tex. App.—Corpus Christi 1990, pet. ref'd). In *Vera*, the court noted that the term "controlled substance" does not necessarily include adulterants and dilutants, and it held that "if adulterants and dilutants are not pled in the indictment, then the indictment in effect contains a pleading that the substance in question is pure cocaine." *Id.* at 311.

However, *Vera* was decided before the legislature amended the Texas Health and Safety Code's definition of "controlled substance" in 1997. *See* Act of May 26, 1997, 75th Leg., R.S., ch. 745, § 1, 1997 Tex. Gen. Laws 2411. The legislature amended the definition of "controlled substance" to include a substance containing "an adulterant" or "a dilutant." *Id.* The legislature also added that the term includes the "aggregate weight of any mixture, solution, or other substance containing a controlled substance." *Id.* The Texas Court of Criminal Appeals has since held that the revised definition of "controlled substance" no longer requires the State "to determine the amount of controlled substance *and* the amount of

6

adulterant and dilutant that constitute the mixture." *Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003) (emphasis in original). Instead, the State need prove "only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight." *Id.*; *see also Jones v. State*, 235 S.W.3d 783, 785–86 (Tex. Crim. App. 2007) (holding that, where defendant had poured methamphetamine into bottle of bleach, the bleach could be used to determine aggregate weight of methamphetamine "[r]egardless of when, how, or why it was added").

Because the statutory definition of "controlled substance" now includes adulterants or dilutants, the State is not required to specifically plead in an indictment the existence of adulterants or dilutants to include them in the calculation of the substance's aggregate weight. *See Hughes v. State*, No. 12-05-00123-CR, 2006 WL 1275000, at *3–4 (Tex. App.—Tyler May 10, 2006, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support conviction for more than four grams of methamphetamine, though indictment did not mention adulterants or dilutants and substance included both methamphetamine and amphetamine).

Here, Lopez testified that the substances found in appellant's house constituted a mixture weighing more than four grams that contained cocaine. This is sufficient to satisfy the statutory definition of a "controlled substance," the

7

language used in the indictment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5). Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction as alleged in the indictment.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).